# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION No. |
| | ) |
| FORD MOTOR COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CONSENT DECREE

Plaintiff, the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), is filing a Complaint concurrently with this Consent Decree, alleging that the Ford Motor Company ("Ford") violated the Clean Air Act ("CAA"), 42 U.S.C. § 7401 et seq., at its facility located in Hazelwood, Missouri ("Facility").

The Complaint, pursuant to Section 113, of the CAA, 42 U.S.C. § 7413(b), seeks injunctive relief and civil penalties for alleged violations of the refrigerant repair, testing, record-keeping, and reporting regulations at 40 C.F.R. Part 82, Subpart F, Sections 82.152 - 82.166, ("Recycling and Emission Reduction"), promulgated pursuant to Subchapter VI of the CAA ("Stratospheric Ozone Protection"), 42 U.S.C. §§ 7671-7671q, at the Facility.

The United States and Ford (the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest. By entering into this Consent Decree, Ford makes no admission of fact or liability with respect to violations of the CAA alleged in the

Complaint or otherwise.

IT IS, ADJUDGED, ORDERED, and DECREED THAT:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and over the Parties. Venue lies in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a) because the violations alleged in the Complaint are alleged to have occurred in, and Ford conducts business in, this judicial district. Ford does not contest the Court's jurisdiction over this action or over Ford and does not contest venue in this judicial district.

2.      Notice of the commencement of this action has been given to the air pollution control agency for Missouri. 42 U.S.C. § 7413(b).

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding on the United States; upon Ford, Ford's officers, directors, and employees, acting in their capacities as officers, directors, and employees; and upon Ford's successors and assigns, as well as all persons in active concert or participation with Ford who receive actual notice of this Consent Decree.

4.      At least thirty (30) Days before transferring ownership or operation of the Facility to any other person, Defendant must provide a copy of this Consent Decree to each prospective successor owner or operator. No transfer will relieve Ford of its obligation to ensure that the terms of this Consent Decree are implemented.

5.      Ford must provide a copy of this Consent Decree to all officers, employees, and

2

agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree.

6.     In any action to enforce this Consent Decree, Ford may not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the CAA or in the regulations promulgated pursuant to the CAA, will have the meaning assigned to them in the CAA and regulations. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

        a.     "Appliance" means a device as defined at 40 C.F.R. § 82.152;

        b.     "Complaint" means the Complaint filed by the United States in this action;

        c.     "Consent Decree" means this document;

        d.     "Day" means a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period will run until the close of business the next business day;

        e.     "Defendant" and "Ford" mean Ford Motor Company;

        f.     "Effective Date" means the date of entry of this Consent Decree by the Court;

        g.     "EPA" means the United States Environmental Protection Agency and any successor departments or agencies of the United States;

3

h.    "Facility" means the discrete parcel of real property or such a parcel improved by Ford's buildings, factory, plant, premises, or other thing, at which Ford operates a vehicle assembly factory, in Hazelwood, Missouri;

i.    "Industrial Process Refrigeration Appliance" or "IPR Appliance" means any Appliance that is directly linked to the manufacturing process and that contains more than fifty (50) pounds of an ODS Refrigerant. The term does not include "Non-ODS Systems" or Appliances used for comfort cooling;

j.    "Non-Ozone Depleting Refrigerant" or "Non-ODS Refrigerant" means any refrigerant that is (i) approved by EPA for the end use of the appliance, and (ii) is not an ODS Refrigerant;

k.    "Non-ODS System" means any cooling system that (i) contains only a Non-ODS refrigerant or (ii) contains no refrigerant;

l.    "ODS Refrigerant" means a Class I or a Class II substance as defined in 40 C.F.R. § 82.3, or a blend of Class I or Class II substances;

m.    "ODS System" means any cooling system that is not a Non-ODS System as defined in this Consent Decree;

n.    "Paragraph" means a portion of this Consent Decree identified by an arabic numeral;

o.    "Parties" means the United States and Defendant;

p.    "Powerhouse Refrigerant Dryer #4" means the IPR Appliance referred to in the Complaint and also referred to as "Air Dryer #4;"

q.    "Retire" or "Retirement" means the permanent removal of an Appliance

4

from service, together with the proper removal of all refrigerant from the Appliance;

r. "Section" means a portion of this Consent Decree identified by a roman numeral;

s. "Mothballing" means the intentional shutting down of an appliance undertaken for a period of time, where the refrigerant has been evacuated from the appliance, at least to atmospheric pressure, in accordance with 40 C.F.R. § 82.152; and

t. "United States" means the United States of America, acting on behalf of EPA.

## IV. DEFENDANT

8. Ford is, or at all times relevant to this matter was, the owner and operator of the Facility.

9. Ford is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and within the meaning of Section 113(d) of the CAA, 42 U.S.C. § 7413(d).

## V. CIVIL PENALTY

10. No later than thirty (30) days after the Effective Date of this Consent Decree, Ford shall pay a civil penalty in the amount of $125,000 to the United States. Payment, referencing DOJ case number 90-5-2-1-08127, shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Ford by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Missouri. Any EFTs received at the United States Department of Justice Lockbox Bank after 11:00 a.m. Eastern Time will be credited on the next business day. At the time of payment, Defendant shall simultaneously send written notice of payment, referencing DOJ case

5

number 90-5-2-1-08127, and a copy of any transmittal documentation to the United States in accordance with Section XIII ("Notices") of this Consent Decree.

11. No portion of the civil penalty paid pursuant to this Consent Decree may be used to reduce Ford's federal or state tax obligations.

12. In addition to any stipulated penalties due pursuant to Section VII, interest on any outstanding balance of principal will accrue at the statutory rate set forth in 28 U.S.C. § 1961 from the due date through the date of full and complete payment.

13. If Ford does not timely pay in full the civil penalty required by this Consent Decree, Ford will be liable to the United States for any reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses actually and reasonably incurred by the United States in connection with collecting the civil penalty.

14. This Consent Decree will be considered an enforceable judgment against Ford for purposes of post judgment collection under Federal Rule 69, Federal Rules of Civil Procedure, and other applicable statutory authority without further order of this Court.

## VI. COMPLIANCE REQUIREMENTS

15. Ford must at all times comply with the CAA and all regulations set forth at 40 C.F.R. Part 82, Subpart F at the Facility. Ford may not use a substitute ODS Refrigerant without adhering to the use restrictions set by EPA's acceptability decision, as per 40 C.F.R. Part 82, Subpart G.

16. By entering into this Consent Decree, Ford certifies that it has mothballed its two comfort cooling Appliances, identified as #9 Fan Room South Mezzanine and #11 Fan Room Cafeteria.

6

17. By entering into this Consent Decree, Ford certifies that it has retired Air Dryer #4. Ford shall not install Air Dryer #4 at another facility, nor shall Ford sell it to another party for use at another facility.

18. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise provided by law.

## VII. STIPULATED PENALTIES

19. Ford must pay Stipulated Penalties in the amounts set forth below for each failure to comply with the requirements of this Consent Decree. "Compliance" includes payment of the civil penalty, as set forth in Section V ("Civil Penalty"), and completion of the requirements under this Consent Decree, as set forth in Section VI ("Compliance Requirements").

20. The following Stipulated Penalties will accrue per violation per day for any noncompliance with the provisions of Sections V and VI of this Consent Decree.

| Period of Failure to Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 30th day | $ 250.00 |
| 31st through 60th day | $ 500.00 |
| 61st day and beyond | $ 1000.00 |

21. Stipulated Penalties are due and payable when the United States makes a demand for payment.

22. Notwithstanding the date of any demand for Stipulated Penalties pursuant to Paragraph 21, all Stipulated Penalties will begin to accrue on the day after the performance is due or on the day the violation occurs, whichever is applicable. Stipulated Penalties will continue to accrue until performance is completed or until the violation ceases. Nothing herein

7

will prevent the simultaneous accrual of separate penalties for separate violations of this Decree.

23. All Stipulated Penalties must be paid within thirty (30) Days after the United States makes a demand for payment. Stipulated Penalties due the United States must, as directed by the United States, be paid by EFT, or by certified or cashier's check in the amount due payable to the "United States Department of Justice," referencing DOJ No. 90-5-2-1-08127 and United States Attorney's Office file number where applicable, and delivered to the office of the United States Attorney, Eastern District of Missouri, Thomas F. Eagleton U.S. Court House, 111 South 10th Street, Room 20.333, St. Louis, MO 63102.

24. Defendant must pay interest on any balance of Stipulated Penalties not paid within the time provided in Paragraph 23. Interest on Stipulated Penalties will be computed as provided for in 28 U.S.C. § 1961. If any Stipulated Penalty is not paid in full when due, the United States is entitled to recover the costs (including reasonable attorneys' fees) incurred in any action necessary to collect any Stipulated Penalty or interest thereon.

25. Subject to the provisions of Section XI ("Effect of Settlement/Reservation of Rights"), the Stipulated Penalties provided for in this Consent Decree are in addition to any other rights, remedies, or sanctions available to the United States by reason of Defendant's failure to comply with any requirement of this Consent Decree or applicable law, except for any violation of relevant statutory or regulatory requirements for which this Consent Decree also provides for payment of a Stipulated Penalty, the United States will elect whether it will seek Stipulated Penalties or statutory penalties for such violation.

26. The United States may, in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due under this Consent Decree.

8

## VIII. FORCE MAJEURE

27.    "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Ford, its contractors, or any entity controlled by Ford that delays the performance of any obligation under this Consent Decree despite Ford's best efforts to fulfill the obligation. "Best efforts" include using best efforts to anticipate any potential Force Majeure event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include Ford's financial inability to perform any obligation under this Consent Decree.

28.    Examples of events that are *not* Force Majeure include, but are not limited to, unanticipated or increased costs or expenses of work, financial difficulties encountered by Ford in performing such work, and the failure of Ford or its representatives including contractors to make complete and timely application for any required approval or permit.

29.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, as to which Ford intends to assert a claim of Force Majeure, Ford must provide notice to the United States in writing, as provided in Section XIII ("Notices") of this Consent Decree, within ten (10) Days of the time Ford first knew of, or by the exercise of due diligence should have known of, the event. Notification must include an explanation and description of the reasons for the delay; the anticipated duration of the delay; a description of all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and Ford's rationale for attributing the delay to a Force Majeure event. Failure to comply

9

with these requirements will preclude Ford from asserting any claim for Force Majeure.

30. Ford has the burden of proving, by a preponderance of the evidence, that an event was a Force Majeure event; that Ford gave the notice required by the preceding Paragraph; that Ford took all reasonable steps to prevent or minimize any delay caused by the event; and that any period of delay Ford claims was attributable to the Force Majeure event was caused by that event.

31. EPA will notify Ford in writing of its agreement or disagreement with Ford's claim of a delay or impediment to performance within thirty (30) Days of receipt of the notice provided under Paragraph 29. If EPA agrees that Ford could not have prevented or mitigated any delay, or anticipated delay, attributable to a Force Majeure event by the exercise of due diligence, EPA will notify Ford in writing of its agreement to an extension of time for Ford's performance of the affected compliance requirement by a period not exceeding the delay actually caused by the event. In the event the Parties cannot agree, EPA's determination will govern unless Ford invokes formal Dispute Resolution pursuant to Section IX of this Consent Decree within fourteen (14) Days after EPA's notification. An extension of time for performance of one or more obligations affected by a Force Majeure event will not, of itself, extend the time for performance of any other obligation.

32. Stipulated Penalties will not be due for the number of days of noncompliance determined to be caused by a Force Majeure event as defined in this Section.

## IX. DISPUTE RESOLUTION

33. Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedure of this Section is the exclusive mechanism to resolve all disputes arising

10

under this Consent Decree, except as otherwise provided in Section VIII ("Force Majeure"). The procedures set forth in this Section do not apply to actions by the United States to enforce obligations of Defendant that have not been disputed in accordance with this Section.

34. Any dispute which arises under or with respect to this Consent Decree will in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations may not exceed twenty (20) Days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute will be considered to have arisen when one party sends the other party a written Notice of Dispute.

35. If the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA will be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiations period, Defendant invoke the formal Dispute Resolution procedures by serving on the United States, in accordance with Section XIII ("Notices") of this Consent Decree a written Statement of Position on the matter in dispute, including, but not limited to, any supporting factual data, analysis, opinion, or documentation.

36. Within twenty (20) Days after receipt of Ford's Statement of Position, the United States will serve on Ford its Statement of Position, including any supporting factual data, analysis, opinion or documentation. Within twenty (20) Days after receipt of the United States' Statement of Position, Ford may submit a reply.

37. An administrative record of the dispute must be maintained by EPA and must contain all statements of position, including supporting documentation, submitted pursuant to this Section. That record, together with other appropriate records maintained by EPA or

11

submitted by Defendant, will constitute the administrative record upon which the matter in dispute is to be resolved.

38.    The Director of the Air Enforcement Division in EPA's Office of Enforcement and Compliance Assurance, ("Director"), or a designated representative, will issue a final decision resolving the dispute. Where the dispute pertains to the performance of the Compliance Requirements under Section VI of this Consent Decree, the decision will be upon the administrative record maintained by EPA pursuant to Paragraph 37. The decision of the Director will be binding on Ford, subject only to the right to seek judicial review, in accordance with Paragraph 39 below.

39.    The decision issued by EPA under Paragraph 38, may be reviewed by this Court upon a motion filed by Ford and served upon the United States within fourteen (14) Days of receipt of EPA's decision.

40.    The final position of the United States will be upheld if supported by substantial evidence in the record. In all disputes Defendant will bear the burden of demonstrating that its position clearly complies with and furthers the objectives of this Consent Decree and the CAA.

41.    The invocation of formal Dispute Resolution procedures under this Section will not extend, postpone or affect in any way any obligation of Ford under this Consent Decree, not directly in dispute, unless the United States or the Court agrees otherwise. Stipulated Penalties with respect to the disputed matter will continue to accrue from the first day of noncompliance, but payment will be stayed pending resolution of the dispute. In the event that Defendant does not succeed on the disputed issue, Stipulated Penalties will be assessed and paid as provided in Section VII ("Stipulated Penalties").

12

## X. FAILURE OF COMPLIANCE

42.     The United States does not, by its consent to the entry of this Consent Decree,
warrant or aver in any manner that Ford's compliance with any aspect of this Consent Decree
will result in compliance with provisions of the CAA, 42 U.S.C. § 7401, et seq., namely,
Subchapter VI of the CAA ("Stratospheric Ozone Protection"), 42 U.S.C. §§ 7671-7671q.
Notwithstanding the United States' review and approval of any document(s) submitted to it by
Defendant pursuant to this Consent Decree, Defendant will remain solely responsible for
compliance with the terms of the CAA and this Consent Decree.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

43.     This Consent Decree resolves the claims of the United States for the violations
alleged in the Complaint. Nothing in this Consent Decree is intended to operate in any way to
resolve any other civil claims or any criminal liability of Ford.

44.     Neither this Consent Decree, nor any requirement hereunder, is to be interpreted
to be a Permit, or a modification of an existing Permit, issued pursuant to the CAA, 42 U.S.C. §
7401 et seq., nor will it in any way relieve Ford of its obligation to obtain a Permit and comply
with the requirements of any Permit or with any other applicable Federal or State, and local
statutes and regulations.

45.     This Consent Decree shall not be construed to prevent or limit the rights of the
United States to obtain penalties or injunctive relief under the CAA, or under other federal or
state laws, regulations, or permit conditions, except as expressly specified herein.

46.     Ford is responsible for achieving and maintaining complete compliance with all

13

applicable federal, state and local laws, regulations, and permits. Ford's compliance with this Consent Decree is not a defense to any action commenced pursuant to said laws, regulations, or permits.

47. This Consent Decree does not limit or affect the rights of Ford or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Ford, except as otherwise provided by law.

48. This Consent Decree may not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

49. The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein.

## XII. COSTS

50. The Parties will each bear their own costs of litigation of this action, including attorneys' fees, except as provided in Paragraphs 13 and 24.

## XIII. NOTICES

51. Except as otherwise provided in this Consent Decree, whenever written notifications, submissions, or communications to the United States or to the Defendant are required by this Consent Decree, they must be made in writing and addressed as follows:

As to the United States:
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Re: DOJ No. 90-5-2-1-08127

and

CFC Coordinator
U.S. EPA, Region VII
901 N. 5th Street
Kansas City, Kansas 66101

As to Ford:
Mr. Tim Green, Esq.
Ford Motor Company
Suite 950 West
3 Parklane Blvd.
Dearborn, MI 48126

and

Mr. William McIntosh
Ford Motor Company
Suite 950 West
3 Parklane Boulevard
Dearborn, MI 48126

52.    A notice submitted pursuant to this Section will be deemed timely if it is correctly

addressed and post marked on or before the date the notice is due, unless otherwise provided in

this Consent Decree or by mutual agreement of the Parties in writing.

53.    Each document required to be submitted pursuant to the terms of this Consent

Decree must contain a certification signed by a responsible corporate officer of Ford. The

certification must read:

I certify under penalty of law that I have examined and am familiar with the
information submitted in this document and all attachments and that this document

15

and its attachments were prepared under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein. I further certify, based on my inquiry of those individuals immediately responsible for obtaining the information, that I believe that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment.

## XIV. RETENTION OF JURISDICTION

54.     The Court will retain jurisdiction of this case until termination of this Consent Decree, for the purpose of enabling the Parties to apply to the Court for such further order, direction, or relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section IX ("Dispute Resolution") of this Consent Decree.

## XV. MODIFICATION

55.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it will be effective only upon approval by the Court. The terms and schedules contained in Section VI ("Compliance Requirements") of this Consent Decree may be modified upon written agreement of the Parties without Court approval, unless any such modification effects a material change to the terms of this Consent Decree or materially affects Ford's ability to meet the objectives of this Consent Decree.

## XVI. TERMINATION

56.     After Defendant has met all compliance requirements of this Consent Decree and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Ford may file with the Court and serve upon the United States a "Motion for

16

Termination of Consent Decree" ("Motion"). In the interim, this Court will retain jurisdiction to enforce the Parties' rights and obligations under this Consent Decree. Nothing contained in this Consent Decree limits the power of the Court to issue such orders or directions as may be necessary to implement, enforce or modify the terms of this Consent Decree or to provide such further relief as the interests of justice may require.

57. The United States will have the right to oppose Ford's Motion and to seek an extension of the Decree. If the United States opposes termination of the Consent Decree, Defendant will have the burden of proof by clear and convincing evidence that Defendant has satisfactorily complied with the requirements of the Consent Decree and that all other requisite conditions for termination of the Consent Decree have been satisfied.

## XVII. PUBLIC PARTICIPATION

58. This Consent Decree will be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the public comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper or inadequate. Defendant consents to the entry of this Consent Decree without further notice.

## XVIII. SIGNATORIES/SERVICE

59. Each undersigned representative of Ford and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents.

17

60.     This Consent Decree may be signed in counterparts, and such counterpart signature pages will be given full force and effect.

61.     Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree.

62.     Defendant hereby agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements of Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XIX. INTEGRATION

63.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor can it be used in construing the terms of this Consent Decree.

## XX. FINAL JUDGMENT

64.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree will constitute a final judgment of the claims settled herein.

IT IS SO ORDERED this  14th  day of  November , 2006.

United States District Judge

18

## FOR THE UNITED STATES OF AMERICA

## UNITED STATES DEPARTMENT OF JUSTICE:

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

8/28/2006
DATED:

__//s// **Ellen M. Mahan**__

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

8/28/2006
DATED:

__//s// **Katherine A. Loyd**__

KATHERINE A. LOYD
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3143
(202) 514-4180 (fax)

THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF MISSOURI:

UNITED STATES ATTORNEY
CATHERINE L. HANAWAY

Dated: 8/28/2006 _____    _s/ Andrew J. Lay_____
ANDREW J. LAY, #28542
ASSISTANT UNITED STATES ATTORNEY
Eastern District of Missouri
111 South Tenth Street
Room 20.333
St. Louis, Missouri 63102
Telephone: (314) 539-2200
Tele-fax: (314) 539-2777

20

THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

8/13/06
DATED

WILLIAM W. RICE
Acting Regional Administrator

United States EPA Region 7
901 N. 5th Street
Kansas City, KS 66101

8/14/06
DATED:

MARTHA R. STEINCAMP
Regional Counsel

United States EPA Region 7
901 N. 5th Street
Kansas City, KS 66101

CONSENT DECREE RE:
U. S. v. Ford Motor Company
Eastern District of Missouri

21

FOR FORD MOTOR COMPANY:

Name: Kathryn S. Lamping
Title: Assistant Secretary

DATED: July 18, 2006